## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **WILLIE E. BRANTLEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 08-2059-KHV** |
| ) | |
| **UNIFIED SCHOOL DISTRICT No. 500** ) | |
| **and KARLA STRICKLAND,** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

### MEMORANDUM AND ORDER

Plaintiff Willie E. Brantley brings suit against his employer, Unified School District No. 500 (the "District") and Karla Strickland, District Director of Nutritional Services. Plaintiff claims that in violation of Title VII, 42 U.S.C. § 2000e et seq., the District (1) discriminated against him because of sex (Count I) and retaliated against him for opposing discrimination (Count II). Under 42 U.S.C. § 1983, plaintiff also claims that defendants violated his right to free speech under the First Amendment (Count III) and that the District violated his procedural due process rights under the Fourteenth Amendment. This matter comes before the Court on Defendant Strickland's Motion For Judgment On The Pleadings (Doc. #10) filed March 14, 2008. For reasons stated below, the Court finds that Strickland's motion should be overruled.

### Standards

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss under Rule 12(b)(6). Mock v. T.G. & Y., 971 F.2d 522, 528 (10th Cir. 1992). In reviewing defendant's motion, the Court assumes the veracity of the "well-pleaded factual

allegations" in the complaint and draws all reasonable inferences in plaintiff's favor. Shaw v. Valdez, 819 F.2d 965, 968 (10th Cir. 1987); see Zinermon v. Burch, 494 U.S. 113, 118 (1990). Factual allegations must be enough to raise a right to relief above the speculative level. Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). The issue is not whether plaintiff ultimately will prevail, but whether plaintiff is entitled to offer evidence to support his claims. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).[1] Although plaintiff need not precisely state each element of his claims, he must plead minimal factual allegations on those material elements that must be proved. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

**Facts**

Plaintiff's complaint alleges the following facts:

In March of 2003, the District hired plaintiff (a man) to work as a warehouse manager. Plaintiff reported directly to Karla Strickland. In August of 2004, the District expanded plaintiff's duties to include delivering for District catering services. In that capacity he worked with Brenda Houston, food preparation manager.

During the 2006-07 school year, plaintiff spoke with Strickland on several occasions about the delivery of catering services and the work environment in the nutritional services department. Specifically, plaintiff told Strickland about delivery problems caused by inadequate staff, lack of planning and untimely food preparation. He told Strickland that delivery of catering services was

---

[1] The Tenth Circuit has previously applied a heightened pleading standard when defendant raised the qualified immunity defense in a motion to dismiss or for judgment on the pleadings. See, e.g., Ramirez v. Colo. Dep't of Corr., 222 F.3d 1238, 1241 (10th Cir. 2000). In Currier v. Doran, 242 F.3d 905, 916 (10th Cir. 2001), however, the Tenth Circuit rejected the heightened pleading requirement.

inefficient and a waste of District funds. Plaintiff also told Strickland that he believed that the work environment in nutritional services was hostile and discriminatory to males. Plaintiff also told Strickland that unidentified individuals had subjected him to hostile and discriminatory treatment based on gender.

On August 10, 2007, plaintiff met with Strickland, Houston and Gwen Childs, Coordinator of Cafeteria Operations. During the meeting, one or more of them accused plaintiff of making inappropriate comments to co-workers about Houston. On August 19, 2007, plaintiff told Dr. Cynthia Lane, District Assistant Superintendent, of his concerns about inefficiencies in delivery of catering services. He also told Lane that male employees were subjected to a hostile work environment in the Nutritional Services Department.

On August 22, 2007, Strickland sent plaintiff a letter which summarized her version of the meeting on August 10. The letter informed plaintiff that she had decided to demote him to the position of Porter, stating in part as follows:

> Unified School District No. 500 employees are expected at all times to conduct them[selves] in a positive manner so as to promote a professional working environment. Toward this end, Unified School District No. 500 employees must, at minimum, . . . "[t]reat all students, visitors, staff and co-workers in a courteous manner." Based on your behavior I have recommended and received approval from Human Resources, that you be re-assigned to the position of Porter at the Eisenhower Cafeteria effective immediately 8/29/07. Your shift will begin at 6:30-2:00. Your new salary will be $16.32/hr for 189-day employment.

On September 26, 2007, John Rios, another District Assistant Superintendent, sent plaintiff a letter which stated that the District Board has "approved your transfer to porter at Eisenhower Middle School to be paid $16.32 per hour, effective August 29, 2007." On October 1, 2007, plaintiff sent the District a letter which requested a Level III grievance hearing on his demotion, as provided by District policy. On October 5, 2007, plaintiff picked up his mail at 3:00 p.m. and found another

letter from Rios. The letter informed him that the District had scheduled his Level III hearing for earlier that day, at 11:00 a.m. Plaintiff immediately went to Rios and explained that he had not received reasonable notice of his Level III hearing. Rios told plaintiff that he would not reschedule the hearing and on October 8, 2007, he sent plaintiff a letter which stated in part as follows:

> A hearing was scheduled in regard to your complaint on October 5, 2007 at 11:00 a.m. in the third floor auditorium at the Central Office. . . . We waited thirty (30) minutes, until 11:30 a.m., to either hear from you or for you to show up late. You failed to appear or call. Holding with past practice, when the complainant fails to show up the decision of management is upheld.

On February 4, 2008, plaintiff filed this suit against the District and Strickland. Plaintiff asserts, *inter alia*, that in violation of Section 1983, defendants demoted him in retaliation for exercising his First Amendment rights – specifically, his speech to Strickland and Lane about the "inefficiencies in the delivery of catering services . . . and the causes of those inefficiencies."[2]

## **Analysis**

Strickland asserts that she is entitled to judgment on the pleadings because the facts set out in the complaint do not allege a First Amendment violation – in particular, she claims that as a matter of law plaintiff did not speak on matters of public concern. Alternatively, Strickland asserts that even if plaintiff has set out a First Amendment violation, she is entitled to qualified immunity because at the time of the violation, plaintiff's First Amendment right to engage in speech which

---

[2] The complaint also alleges that plaintiff complained to Strickland and Lane of a hostile work environment. Strickland's motion for judgment on the pleadings asserts that she is entitled to qualified immunity for plaintiff's claim that she demoted him because of his complaint about a hostile work environment. In response to Strickland's motion for judgment on the pleadings, however, plaintiff does not assert that the District fired him for any speech about a hostile work environment. See Plaintiff's Memorandum In Opposition To Defendant Strickland's Motion For Judgment On The Pleadings (Doc. #17) at 3-4. Plaintiff does not deny that defendant is entitled to qualified immunity on any claim that she retaliated against plaintiff for speech concerning a hostile work environment.

addressed "inefficiencies in the delivery of catering services . . . and the causes of those inefficiencies" was not clearly established.

**I.       First Amendment Right To Free Speech**

A public employer may not retaliate against an employee for exercising his or her constitutionally protected right of free speech. The Court traditionally applies a four-part test to determine whether plaintiff has set forth a constitutional claim for First Amendment retaliation. Hulen v. Yates, 322 F.3d 1229, 1237 (10th Cir. 2003) (citing Connick v. Myers, 461 U.S. 138 , 147 (1983); Pickering v. Bd. of Educ., 391 U.S. 563 (1968)). The four-part test requires the Court to examine the following issues:

1.     Did the speech in question involve a matter of public concern?

2.     If so, does the employee's interest in the expression outweigh the government employer's interest in regulating the speech of its employees so that it can carry on an efficient and effective workplace?

3.     Was the employee's speech a substantial factor driving the challenged employment action?

4.     If so, can the employer show that it would have taken the same employment action against the employee even in the absence of the protected speech?

See Kent v. Martin, 252 F.3d at 1141, 1143 (10th Cir. 2001) (quotations and citations omitted). If plaintiff makes the first three required showings, defendant has an opportunity to show that it would have terminated plaintiff's employment even absent the protected speech. Horstkoetter v. Dep't of Pub. Safety, 159 F.3d 1265, 1271 (10th Cir. 1998). The first two issues are normally questions of law for the Court, while the final two are questions of fact. See Barker v. City of Del City, 215 F.3d 1134, 1139 (10th Cir. 2000).[3]

---

[3]     In Garcetti v. Ceballos, 547 U.S. 410 (2006), the Supreme Court instructed courts to
(continued...)

A.     Public Concern

Strickland contends that plaintiff's allegations involve speech that relates to plaintiff's role as an employee, rather than a matter of public concern. This is a question of law, in which the Court asks whether plaintiff's speech can be fairly considered to relate to any matter of political, social or other concern to the community. Hardeman v. City of Albuquerque, 377 F.3d 1106, 1113–14 (10th Cir. 2004) (citing Burns v. Bd. of County Comm'rs, 330 F.3d 1275, 1286 (10th Cir. 2003)). An employee's speech must not merely relate generally to a subject matter that is of public interest, but must "sufficiently inform the issue as to be helpful to the public in evaluating the conduct of government." Wilson v. City of Littleton, Colo., 732 F.2d 765, 768 (10th Cir. 1984). To judge whether particular speech relates merely to internal workplace issues, courts examine the "content, form, and context" of the speech, which includes scrutinizing whether the speaker's purpose was to bring an issue to the public's attention or to air a personal grievance. Schrier v. Univ. of Colo.,

---

[3](...continued)
initially address another question as part of the Connick/Pickering test – that is, whether the employee made the statement as a citizen or pursuant to his or her official duties. See Ryan v. Shawnee Mission Unified Sch. Dist. No. 512, Case No. 05-2213-JWL, 2006 WL 1888326, at *13 (D. Kan. July 7, 2006) (overwhelming bulk of statements that plaintiff made pursuant to duties as physical therapist, not citizen). Garcetti thus adds a layer to the analysis which the parties have not addressed. From the facts set out in the complaint, however, it is not clear whether plaintiff was performing job duties when he made the speech in question. See Garcetti, 547 U.S. at 421 (fact that memo concerned subject matter of employment not dispositive). Further, although a job description would be a logical starting point for the analysis, neither side has specifically addressed plaintiff's job description. See Ryan, 2006 WL 1888326, at *13; Logan v. Ind. Dep't of Corr., No. 04-0797, 2006 WL 1750583, at *2 (S.D. Ind. June 26, 2006) (although health care administrator had no direct responsibility for nursing personnel decisions, statements regarding serious problems with nursing care and recommendation to replace nursing director were within job duties; job description included reviewing status of inmates with serious health problems, evaluating medical services and meeting to discuss evaluations). On this record, the Court cannot find as a matter of law that plaintiff's speech was part of his job duties.

427 F.3d 1253, 1263 (10th Cir. 2005); Moore v. City of Wynnewood, 57 F.3d 924, 932 (10th Cir. 1995) (court must look beyond general topic of speech to evaluate more specifically what was said on topic); Gardetto v. Mason, 100 F.3d 803, 812 (10th Cir. 1996) (to determine whether plaintiff's speech addresses personal grievances or broader public purpose, courts focus on speaker's motive). Speech aimed at exposing improper operations or questioning the integrity of government officials clearly concerns public interests.[4] Conaway v. Smith, 853 F.2d 789, 796 (10th Cir. 1988). In contrast, speech regarding "internal personnel disputes" ordinarily will not involve a public concern. Id. (citing Connick, 461 U.S. at 146). Similarly, criticisms of internal management decisions, and complaints addressing the structure of purely internal administrative bodies do not reflect public concerns. Gardetto, 100 F.3d at 813–14 (details of internal budgetary allocations not matters of public concern). The Court must necessarily consider each incident of speech in context of the others, which are part of the whole record.

Strickland argues that none of plaintiff's alleged speech addressed a matter of public concern. Count III generally characterizes plaintiff's speech as addressing "inefficiencies in the delivery of catering services . . . and the causes of those inefficiencies." The complaint alleges that on several occasions during the 2006-07 school year and at the August 19, 2007 meeting, plaintiff addressed concerns about inefficiencies in the Nutritional Services department. On a motion to dismiss on the pleadings, the Court must draw all reasonable inferences in plaintiff's favor. Viewed in this light, plaintiff's speech addressed inefficiency in the District food program. The Court cannot

---

[4] When deciding whether speech qualifies as a matter of public concern, courts customarily focus on whether speech was calculated to disclose wrongdoing or inefficiency or other malfeasance on the part of governmental officials in the conduct of their official duties. Patrick v. Miller, 953 F.2d 1240, 1248 (10th Cir. 1992).

say that as a matter of law, such complaints do not involve matters of public concern.

Strickland does not address the remaining three parts of the Connick/Pickering test. Rather, she relies upon her argument that plaintiff's speech was not a matter of public concern, and thus asserts that the Court has no reason to scrutinize the government action. See Connick, 461 U.S. at 146 (if speech not of public concern, no need to analyze reasons for government action). Unless plaintiff relies upon speech that is wholly unprotected by the First Amendment, Pickering balancing is possible only *after* the parties have had an opportunity to conduct discovery.[5] See Gustafson v. Jones, 117 F.3d 1015, 1019 (7th Cir. 1997) (impossible in most cases to determine from pleadings whether defendant's interest in regulating speech outweighs plaintiff's First Amendment interests).

As for the third part of the test, Strickland does not argue that plaintiff has failed to allege that his speech was a substantial or motivating factor in the adverse action. See Getz v. Shawnee County Bd. of County Commr's, 194 F. Supp.2d 1154, 1166 (D. Kan. 2002). Motive often can only be shown circumstantially, because the ultimate fact of retaliation turns on defendant's state of mind, which is particularly difficult to establish by direct evidence. Id.; see Smith v. Maschner, 899 F.2d 940, 949 (10th Cir. 1990). Temporal proximity between the protected speech and adverse

---

[5] On summary judgment, if plaintiff sets forth evidence of speech which touched on matters of public concern, the Court proceeds under Pickering to determine whether defendants' interest in regulating plaintiff's speech – so that the District could carry on an efficient and effective workplace – outweighed plaintiff's interest in the expression. Kent, 252 F.3d at 1143. Under this balancing test, the Court considers "whether the statement impaired discipline by superiors or harmony among co-workers, ha[d] a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impede[d] the performance of the speaker's duties or interfere[d] with the regular operation of the enterprise." Rankin v. McPherson, 483 U.S. 378, 388 (1987). The State has a strong interest in avoiding interferences with work, personnel relationships or the speaker's job performance, all of which may detract from the public employer's function. Id. Whether the interest of the employee outweighs the interest of the public employer is a question of law for the Court, but the facts necessarily inform the analysis. See Barker, 215 F.3d at 1139.

employment action may suggest a retaliatory motive; standing alone, however, it will not conclusively establish such motive. Baca v. Sklar, 398 F.3d 1210, 1222 (10th Cir. 2005) (citing Marx v. Schnuck Mkts., 76 F.3d 324, 329 (10th Cir. 1996); Butler v. City of Prairie Village, 172 F.3d 736, 746 (10th Cir. 1999)). Closeness in time is sufficient, however, when coupled with the employer's knowledge of protected activity. Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1172 (10th Cir. 2006) (period of four to six weeks between protected activity and termination sufficient to withstand summary judgment). As noted, defendant's motion does not address motive. The complaint alleges that on August 19, 2007, plaintiff complained to Assistant Superintendent Lane of inefficiencies in the catering services, that Strickland was aware of his complaints, and that on August 22, 2007 Strickland notified plaintiff that he was demoted. The proximity between his complaint to Lane and his demotion is sufficient to allege causation.[6]

## II. **Qualified Immunity**

Strickland asserts that even if plaintiff has set forth a First Amendment retaliation claim, she is entitled to qualified immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity provides government

---

[6] Once plaintiff discharges his burden on the first three Connick/Pickering factors, defendant can escape liability by showing that she would have taken the same action even absent the protected conduct. Bd. of County Comm'rs of Wabaunsee County v. Umbehr, 518 U.S. 668, 675 (1996); see also Ballard v. Muskogee Reg'l Med. Ctr., 238 F.3d 1250, 1253 (10th Cir. 2001) ("anyway" defense is complete bar to liability). Defendant must make this showing by a preponderance of the evidence. Baca, 398 F.3d at 1222. Strickland does not raise the same decision defense in her motion for judgment on the pleadings.

officials immunity from suit as well as from liability for their discretionary acts. See Mitchell v. Forsyth, 472 U.S. 511, 526-27 (1985). The doctrine of qualified immunity serves the goals of "protecting officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Butz v. Economou, 438 U.S. 478, 506 (1978).

To determine whether plaintiff can overcome the qualified immunity defense, the Court first determines whether plaintiff has asserted a violation of a constitutional right. Roska v. Peterson, 328 F.3d 1230, 1239 (10th Cir. 2003). The Court then decides whether that right was clearly established such that a reasonable person would have known that the conduct violated that right. Id. (citing Garramone v. Romo, 94 F.3d 1446, 1449 (10th Cir. 1996)). Order is important; the Court must decide first whether plaintiff has alleged a constitutional violation, and only then proceed to determine whether the law was clearly established. Roska, 328 F.3d at 1239 (citing Saucier v. Katz, 533 U.S. 194, 200 (2001)).

The Court has found that viewed in the light most favorable to plaintiff, the complaint alleges a constitutional violation. Therefore the Court must next determine whether, at the time of the alleged violation, that right was so clearly established that a reasonable person would have known that the conduct violated that right. Garramone, 94 F.3d at 1449. In order to show that the law was clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 516 (10th Cir. 1998).

Strickland asserts that when defendants demoted plaintiff in August of 2007, the law was not clearly established that internal complaints to supervisors about government inefficiency touch on

matters of public concern. Plaintiff argues that his First Amendment right to act as a whistleblower to expose governmental "corruption or inefficiency" was clearly established by the Tenth Circuit in 1992, in Patrick, which stated as follows:

> "Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials, in terms of content, clearly concerns matter of public import." Conaway, 853 F.2d at 796. Although Conaway was decided contemporaneously with Patrick's alleged wrongful termination, this Circuit and most others have applied this same rule for many years. See, e.g., McKinley v. City of Eloy, 705 F.2d 1110 (9th Cir.1983); Key v. Rutherford, 645 F.2d 880 (10th Cir.1981). In other words, courts customarily focus on whether speech "was calculated to disclose wrongdoing or *inefficiency* or other malfeasance on the part of governmental officials in the conduct of their official duties" when deciding whether speech qualifies as a matter of public concern. Koch v. City of Hutchinson, 847 F.2d 1436, 1445 (10th Cir.), cert. denied, 488 U.S. 909, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988).

953 F.2d at 1247-48 (emphasis added).

Plaintiff correctly points out that the United States Supreme Court and the Tenth Circuit have determined on "countless occasions" that a public employer cannot retaliate against an employee for exercising his or her constitutionally protected right of free speech. Sedillos v. Bd. of Educ. of School Dist. No. 1, No. 103CV01526EWNBNB, 2005 WL 2086008, at *31 (D. Colo. Aug 29, 2005) (citing *inter alia*, Givhan v. W. Line Consol. Sch. Dist., 439 U.S.410, 414-16 (1979) (teacher's complaints and criticism of school policies and practices communicated privately to principal protected by First Amendment); McFall v. Bednar, 407 F.3d 1081, 1090 (10th Cir. 2005) (government employee could not be terminated for speaking out on matters of public concern); Johnsen v. Indep. Sch. Dist. No. 3, 891 F.2d 1485, 1490 (10th Cir. 1989) (public school nurse's speech critical of school district's medication policy was matter of public concern); Conaway, 853 F.2d at 795 (employee memo notifying county that other employees were not discharging

governmental responsibilities is matter of public concern)).[7] Thus, the law is clearly established that a public employer may not penalize an employee for speech on a matter of public concern.

The qualified immunity analysis requires the Court to determine whether the right allegedly violated was clearly established in a particularized sense: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). In other words, the right must be placed in a reasonably specific context. See Jordan v. Carter, 428 F.3d 67, 74-75 (1st Cir. 2005); Wagner v. City of Holyoke, 404 F.3d 504, 509 (general right to speak on matters of public concern without retaliation clearly established before 1994, but qualified immunity analysis requires more specific formulation). The undeveloped record in this case does not provide a specific context, and the complaint does not allege in detail the content and context of plaintiff's statements. Strickland did not move for a more definite statement. See Fed. R. Civ. P. 12(e). The Court therefore cannot eliminate the possibility that the facts will show a violation of clearly established law. See Jordan, 428 F.3d at 75 (if plaintiffs' criticism consisted of serious expressions of concern, voiced in appropriate manner, about effect of supervisor's poor performance on pubic safety, and defendant's retaliation aimed at silencing criticism for own advantage, precedent would have clearly established that balance of interest tipped in plaintiff's favor).

---

[7] In analyzing qualified immunity on First Amendment claims, the Tenth Circuit recognizes that "a rule of law determined by a balancing of interests is inevitably difficult to clearly anticipate." Melton v. City of Okla. City, 879 F.2d 706, 729 (10th Cir. 1989). Nevertheless, the Tenth Circuit has also noted that "to the extent that courts in analogous (but not necessarily factually identical) cases have struck the necessary balance, government officials will be deemed on notice." Id. at n.36; see also Prager v. LaFaver, 180 F.3d 1185, 1191-92 (10th Cir. 1999).

Here, the pleadings adequately allege speech on a matter of public concern and a retaliatory decision to demote plaintiff. The record is insufficiently developed to allow a detailed analysis of the speech or conduct at issue. In these circumstances it would be premature to find that Strickland is entitled to qualified immunity. See Hammett v. Okla. Dep't of Mental Health, 153 F.3d 727 (Table), 1998 WL 427079, at *4 (10th Cir. 1998) (dismissal for failure to state claim on qualified immunity grounds generally inappropriate because defense requires factual review). Strickland is not entitled to a finding on the pleadings that she is entitled to qualified immunity from suit. This does not preclude Strickland from developing evidence that would support a finding of immunity at the summary judgment stage.

**IT IS THEREFORE ORDERED** that Defendant Strickland's Motion For Judgment On The Pleadings (Doc. #10) filed March 14, 2008 be and hereby is **OVERRULED**.

Dated this 15th day of May, 2008 at Kansas City, Kansas.

s/Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge