IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WILLIE E. BRANTLEY,

        *Plaintiff*,

vs.

        Case No. 08-2059-EFM

UNIFIED SCHOOL DISTRICT No. 500 and
KARLA STRICKLAND,

        *Defendant.*

## MEMORANDUM AND ORDER

Before the Court is Defendant Unified School District No. 500's ("USD 500") motion for summary judgment (Doc. 40) and Defendant Karla Strickland's ("Strickland") motion for summary judgment (Doc. 42).   The motions have been fully briefed. For the following reasons, the Court grants Defendant's USD 500's motion, and the Court grants Defendant Strickland's motion.

## I.  Facts

Plaintiff William Brantley worked for USD 500. Brantley worked as a substitute driver for food services in October of 2001.  During that month, Brantley and another male employee, Eugene Swygert, got into a heated argument and had to be physically restrained by Brantley's supervisor. Brantley did not receive any discipline for this incident, and in April of 2002, he submitted his resignation as a substitute driver. Karla Strickland, director of nutritional services, talked him into staying on part-time.

-1-

During the 2003-2004 school year, Strickland informed Brantley of a job opening in the warehouse. Brantley submitted an application on February 23, 2004 for the warehouse manager position. Strickland interviewed Brantley and selected him for the position. Brantley began work as the warehouse manager for nutritional services in late April of 2004.

In August of 2006, Brantley relayed a complaint to the kitchen manager, Brenda Houston, about a rotten tomato being on the customer's salad. Brantley had relayed several customer complaints about the quality of the food he had been delivering. Houston was professional when speaking with Brantley about his complaints in August of 2006.

On April 2, 2007, a meeting was held in which Brantley was the only male present. The meeting was called to discuss issues with the department's catering service. Brantley testified that Strickland's demeanor during that meeting was negative and that she displayed hatred toward him. Brantley also stated that he brought up in the meeting that he tried to explain about the timely manner of getting food prepared and a rotten salad.

In later spring or early summer of 2007, nutritional services received a new truck from the district, and Brantley wanted to be given the new truck as his primary vehicle. The truck was given to co-worker Swygert in central kitchen, who made multiple deliveries of breakfasts and lunches to school every day. On or about June 21, 2007, Brantley was allowed to use the new truck to move some heavy equipment. While leaving with the truck, Brantley said to Swygert, "driving the truck was good, but having Kesha cum on the end of your dick was better."

Swygert made a complaint to Strickland about Brantley's comment. Brantley admitted that he made the comment, and Strickland told him it was inappropriate and unacceptable in the workplace. She reminded Brantley that he had been told before not to make inappropriate comments

in the workplace and suspended Brantley for three days.  Brantley felt the discipline was appropriate and did not challenge it.

On August 6, 2007, a catering event was scheduled for approximately 400 people. The food was not ready on time which resulted in Brantley arriving late with the food.  Brantley called Strickland to inform her of the problems with catering the luncheon.  Although Brantley received no discipline for the catering event, he believed that Strickland was upset with him specifically rather than upset with the situation.  Brantley received a Certificate of Achievement and was commended for his hard work during the catering event from Strickland.

On August 7, 2007, three catering events were scheduled. Brantley spoke with Houston that morning to discuss the catering events, and Houston asked Brantley to deliver the catering events that required setup and to have a new employee Elton Lasley deliver the events that could be dropped off and needed no setup. Houston had been told by Strickland to inform Brantley what to do.  Brantley decided on his own to take Lasley with him on one of Brantley's deliveries and left without telling Houston.

Shortly after Brantley left, Houston called him looking for Lasley.  Brantley told her that he took Lasley with him to show him where one of the schools was located. Houston voiced concern to Brantley about getting the other two catering events delivered on time that morning, and Brantley responded that the other two events would have to wait until he and Lasley returned. While Houston put Brantley on hold to take another call, Brantley said to Lasley that Houston was setting him to fail by having him deliver events on his own. Houston heard the conversation and told him not to speak badly about her to other employees.

On August 8th, Strickland states that she overheard Brantley in the dish room telling two male-coworkers that he had hung up on Houston and what had occurred on August 7th.. Brantley denies making these statements and states that he did not make any statements on August 8th about what had occurred on August 7th.

Brantley met with Strickland, Houston, and Gwen Childs on or about August 10, 2007 to discuss his actions during the August 7th catering events and his inappropriate comments about his supervisor. During this meeting, Strickland told Brantley that he should have followed the instructions and communicated with Houston to work together. Strickland also informed him that his actions were inappropriate and insubordinate.

Brantley met with assistant superintendent Dr. Lane for about an hour on or around August 20th.[1] Brantley told Dr. Lane that he felt his file was being filled with negative information, and Brantley relayed the August 7th catering event, the accusation from Houston that he was speaking inappropriately about her, and how Strickland was eavesdropping on him. Brantley informed Dr. Lane about an incident in December of 2006 where Strickland raised her voice at him in the presence of other co-workers. Brantley stated that Strickland told him that she did not raise her voice at him and that Brantley was being disrespectful by confronting her in front of the other employees. Both parties apologized to each other. Although Brantley received no discipline for this action, he felt that Strickland's tone of voice was discipline.

Brantley also informed Dr. Lane that he believed Strickland was mean to him during a April 2, 2007 meeting with other employees and that he felt Strickland threw a water balloon at his face

---

[1]There is a dispute as to the date the meeting between Plaintiff and Dr. Lane occurred. Plaintiff asserts that it occurred on August 20, 2007 while Defendant asserts it occurred at or around August 22, 2007. Viewing the facts in the light most favorable to Plaintiff, the Court will use the date of August 20, 2007.

at a company picnic in May of 2007 as a sign of aggression. Brantley informed Dr. Lane that he believed he was working in a "hostile work environment" but did not explain who was creating the hostile environment or explain what was hostile about it. Brantley stated that he believed "there was a lot of anger and hatred and that they was treating me differently because I was a man."

The meeting between Brantley and Dr. Lane lasted approximately one hour, and Dr. Lane told Brantley that she would talk to Strickland after a director's meeting later that week. Strickland stated that she spoke with Dr. Lane after the director's meeting, and Dr. Lane informed Strickland that Brantley had been in to see her, and that she and Strickland needed to get together. On August 24, 2007, Strickland met with Dr. Lane to discuss the topics that Brantley had raised with Dr. Lane. Strickland stated that Dr. Lane informed her that those topics included Brantley's concerns about the catering service, food being prepared with mold on it, and that he felt like he worked in a hostile work environment. When Strickland inquired about what Brantley meant by a hostile work environment, Dr. Lane stated "just some of the issues that he had brought to her attention."

On August 27, 2007, Strickland sent a memo to Dr. Lane, giving her a written account of some of the incidents they had discussed on August 24th. Ms. Strickland indicated that none of the incidents created a hostile work environment and that Brantley had never spoken to Strickland about a hostile work environment.[2]

On August 28, 2007, Strickland hand delivered a letter to Brantley that was dated August 22, 2007. The letter stated that its purpose was to summarize the meeting that occurred on August 10, 2007 between herself, Brantley, Houston, and Childs. Strickland stated that they discussed in

---

[2]Brantley states that he told Strickland that the workplace was hostile to male employees sometime after April of 2007. However, the cited testimony indicates that Brantley actually testified that he could not remember the exact date he told Strickland the workplace was hostile to male employee but it was sometime between 2004 and 2006.

the meeting his inappropriate behavior on August 7th and 8th and summarized the events that happened on those days.  The letter noted that Brantley had been suspended for three days without pay due to the incident that occurred on June 21, 2007 and that he had been warned that another incident involving inappropriate behavior or comments could result in further disciplinary action. Strickland set forth the district policy that stated in part:

> The following conduct is inconsistent with a professional working environment and is prohibited.  Any employee who engages in such conduct will be subject to diplomacy action, up to and including termination.
> (1) Use of profanity or abusive language
> (3) Insubordination or the refusal by a Unified School district No. 500 employee to follow the instructions of his/her superior concerning a job-related matter.

District policy also required employees to treat students, visitors, staff and co-workers in a courteous manner. Strickland stated that she had recommended and received approval from Human Resources that he be re-assigned to the position of Porter at the Eisenhower Cafeteria effective immediately, August 29, 2007.  The warehouse manager position was not filled after Brantley was transferred, but Randall Stephens, a warehouse driver, is currently performing the duties.

On September 13, 2007, Brantley sent Strickland a letter trying to get her to reconsider her decision to reassign him.  Strickland sent Brantley a letter on September 19, 2007 advising him that she had not changed her decision. On October 1, 2007, Brantley requested a Level III grievance hearing on his reassignment.[3]  On that same day, Superintendent Jill Shackelford sent a letter to Brantley notifying him that his Level III grievance hearing would be held on October 5, 2007 at 11:00 a.m.

---

[3]Plaintiff requested in his letter to move from Level II to Level III, and Defendant contends Plaintiff intended to request a Level II hearing as that was the next appropriate step.  However, when Defendant responded to this request, Defendant stated that it was granting a "Level III" hearing.

Brantley did not receive the notice on time because he had forwarded his mail to a post office box and only checked the box twice a week. Brantley does not know whether he notified anyone at USD 500 that he had changed his address. Brantley picked up the letter on October 5, 2007 at 2:30 p.m. After Brantley realized he had missed the grievance hearing, Brantley met with assistant superintendent J.D. Rios who informed Brantley that they had waited for thirty minutes for him to arrive at the hearing.  On October 8, 2007, Rios mailed a letter to Brantley which stated that seven people were present at the meeting on October 5, 2007 at 11:00 a.m. and waited for thirty minutes for Brantley.  The letter stated: "Holding with past practice, when the complainant fails to show up the decision of management is upheld."

Brantley did not ask the Board of Education to reconsider Rios' decision to uphold Brantley's demotion but filed a charge of discrimination with the Equal Employment Opportunity Commission on October 25, 2007.    In his charge with the EEOC, Brantley stated that "[o]n or about August 22, 2007, I was disciplined and demoted from my Warehouse Manager Position.  I believe the above action was due to my race (Black) and sex (Male) in that other employees were treated more favorable under similar circumstances.  I also feel this action was due to a complaint I had recently made to an Assistant Superintendent concerning the Director who demoted me and was therefore retaliation.  This violates Title VII of the Civil Rights Act of 1964, as amended." After accepting the job as porter, Brantley stayed in that position until he resigned from USD 500.

Plaintiff brings claims against Defendant USD 500 of (1) disparate treatment because of his gender in violation of Title VII; (2) retaliation for protesting gender discrimination in violation of Title VII; (3) retaliation for exercising his right of free speech, in violation of the  First Amendment and 42 U.S.C. § 1983; and (4) deprivation of a property interest in his continued employment

without due process of law in violation of the Fourteenth Amendment and 42 U.S.C. § 1983. Plaintiff also brings a separate claim against Defendant Karla Strickland of retaliation for exercising his right of free speech, in violation of the First Amendment and 42 U.S.C. § 1983.  Defendant USD 500 and Defendant Strickland seek summary judgment.

## II.  Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[4]  "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[5]  A fact is "material" when "it is essential to the proper disposition of the claim."[6]  The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[7]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[8]  In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[9]

---

[4]Fed. R. Civ. P. 56(c).

[5]*Haynes v. Level 3 Communications*, LLC, 456 F.3d 1215, 1219 (10th Cir. 2006).

[6]*Id.*

[7]*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[8]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

[9]*Id.* (citing *Celotex*, 477 U.S. at 325.)

-8-

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[10]  The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[11]  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[12] Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[13]  The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[14]

Finally, summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[15]

## III.  Analysis

### A. Title VII Discrimination Claim

Plaintiff brings a disparate treatment discrimination claim and asserts that he was demoted because his supervisor, Strickland, was motivated by a discriminatory animus toward him because he was male.  Defendant moves for summary judgment on Plaintiff's claim stating that Plaintiff cannot establish a prima facie case of reverse gender discrimination, there was a legitimate reason

---

[10]*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[11]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000)(citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[12]*Adler*, 144 F.3d at 671.

[13]*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[14]*Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[15]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

for demoting Plaintiff, and Plaintiff cannot present any evidence that Defendant's reason was pretextual.

A party asserting a discrimination claim under Title VII may proceed in one of two ways.[16] "Under what is often characterized as a 'mixed-motive' theory, the plaintiff may directly show that [discriminatory] animus played a 'motivating part' in the employment decision."[17] "Once the plaintiff proves that [discriminatory] animus was a motivating factor, the burden of persuasion shifts to the defendant to prove that it would have taken the same action absent the [discriminatory] motive."[18] In the alternative, if the plaintiff is unable to directly establish that discrimination played a motivating part in the employment decision, the plaintiff may "rely on the familiar three-part *McDonnell Douglas* framework to prove that the employer's proffered reasons for its decision is a pretext for [discrimination]."[19]

However, Plaintiff is proceeding under the mixed motive method. In a mixed motive case, the plaintiff "must introduce direct or circumstantial evidence that the alleged [discriminatory] motive 'actually relate[s] to the question of discrimination in the particular employment decision,

---

[16]*Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1224-25 (10th Cir. 2008). Most of the 10th Circuit cases addressing a mixed-motive theory are in the context of alleged retaliation. Discrimination, however, may be pursued under the mixed-method theory, as well. *See, e.g.*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

[17]*Fye*, 516 F.3d at 1225 (citing *Price Waterhouse*, 490 U.S. at 250).

[18]*Fye*, 517 F.3d at 1225 (citing *Price Waterhouse*, 490 U.S. at 252).

[19]*Fye*, 516 F.3d at 1225. In a reverse discrimination case, under the *McDonnell Douglas* framework, a prima facie case requires a stronger showing. *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006). A plaintiff claiming reverse discrimination "must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority.'" *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992). In the alternative, a plaintiff may produce sufficient facts to support a reasonable inference "that but for plaintiff's status the challenged decision would not have occurred." *Id.* at 590. Although Defendant asserts that Plaintiff fails to make a prima facie case of reverse gender discrimination, Plaintiff is proceeding under a mixed-motive theory. As such, the *McDonnell Douglas* framework is not applicable. *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 550 (10th Cir. 1999).

not to the mere existence of other potentially unrelated, forms of discrimination in the workplace.'"[20]

A plaintiff must present evidence "that directly shows that [discrimination] played a motivating part in the employment decision at issue."[21]

"Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption."[22] In a mixed-motive case, "direct evidence of discrimination includes evidence of 'oral or written statements on the part of a defendant showing a discriminatory motivation.'"[23] Direct evidence can also consist of circumstantial evidence.[24] While circumstantial evidence is sufficient to demonstrate that the employer was motivated by a discriminatory animus, it must relate directly to the discriminatory motive.[25]

Plaintiff contends that there are two pieces of evidence from which a reasonable jury could infer that he was demoted due to Strickland's discriminatory animus. The first piece of evidence Plaintiff relies upon is favorable treatment of similarly situated female employees, and the second piece of evidence is the alleged falsity of Strickland's decision. The Court will address each piece of evidence.

---

[20]*Id.* (quoting *Thomas v. Nat'l Football League Players Ass'n*, 131 F.3d 198, 204 (D.C. Cir. 1997)).

[21]*Fye*, 516 F.3d at 1226.

[22]*Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007) (citing *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 855 (10th Cir. 2007)).

[23]*Cuenca v. Univ. of Kan.*, 101 Fed. Appx. 782, 788 (10th Cir. 2004) (unpublished) (quoting *Kendrick v. Penske Transp. Servs. Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000)).

[24]*Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98-102 (2003).

[25]*Fye*, 516 F.3d at 1226 (citing *Thomas v. Denny's, Inc*., 111 F.3d 1506, 1512 (10th Cir 1997)).

With regard to Plaintiff's evidence regarding similarly situated employees, Plaintiff states that he was treated discourteously by a female co-worker in December of 2006 and a different female co-worker in January of 2007, and Strickland failed to investigate either incident or take any disciplinary action against either employee.[26]   Defendant asserts that Strickland testified that she did not recall Plaintiff's first complaint and that the employee involved in the second incident received an oral and written instruction.   It would appear that this would raise a disputed fact, but even taking the facts in the light most favorable to Plaintiff that Strickland did not discipline either employee, his claim fails.

Plaintiff's argument that an inference of discrimination is warranted fails because these incidents do not appear to be similar to Plaintiff's incident in which he was demoted. "Individuals are considered 'similarly-situated' when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of 'comparable seriousness.'"[27]   There is no evidence in front of the Court that the two female employees engaged in conduct of comparable seriousness.   Plaintiff disregarded a order that came from a supervisor.   In addition, Plaintiff spoke discourteously and inappropriately about a fellow employee to another employee. There is no evidence that the female employees disregarded an order that came from a supervisor or spoke discourteously and inappropriately about one employee to another employee.   Indeed, the evidence in front of the Court is that these employees spoke directly to Plaintiff.   Furthermore, there is no evidence that the female employees had recently spoken

---

[26]Defendant objects to Plaintiff's affidavit on the basis that it is self-serving and not based on personal knowledge. With regard to these two employees, Defendant has also presented testimony from Ms. Strickland deposition regarding the two incidents in which Ms. Strickland disputes Plaintiff's contention.

[27]*Equal Employment Opportunity Comm'n v. PVNF, L.L.C.*, 487 F.3d 790, 801 (10th Cir. 2007) (citing *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006)).

discourteously about another employee.

Although identical conduct is not required to show similarity, conduct that is not sufficiently similar does not allow "an inference of discrimination on the basis of their disparate treatment."[28] As such, Plaintiff's first piece of evidence is insufficient to raise a genuine issue of material fact as to whether his supervisor was motivated by a discriminatory animus due to his gender. A reasonable jury could not infer on this basis that he was demoted partly due to Strickland's discriminatory animus

The second piece of evidence Plaintiff relies upon is the alleged false explanation given by Strickland for deciding to demote him. "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."[29] "[I]n drawing [a *Reeves*-type] inference, the factfinder must be able to conclude, based on a preponderance of the evidence, that discrimination was a determinative factor in the employer's actions - simply disbelieving the employer is insufficient."[30] Applying this principle to a mixed-motive case requires the Court to determine whether the preponderance of the evidence indicates that discrimination played a part in the employer's actions.

---

[28]*PVNF,* 487 F.3d at 801 (finding that plaintiff failed to establish a prima facie case of discrimination based on disparate treatment when plaintiff did not demonstrate that a similarly situated individual's conduct was sufficiently similar).

[29]*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000). Plaintiff is asserting a mixed-motive theory but relying on cases that have discussed circumstantial evidence under the pretext prong of the *McDonnell Douglas* burden shifting framework. In evaluating Plaintiff's evidence, the Court will consider the principles set forth in the cases to which Plaintiff cites. *See Wright v. C & M Tire*, 545 F. Supp. 2d 1191, 1205 n. 11 (D. Kan.2008) (stating "the court applies the principle set forth in these cases regardless of whether that principle is deemed to comport with a 'mixed motive' theory as plaintiff suggests or the *McDonnell-Douglas* theory.")

[30]*Young v. Dillon Co.'s Inc.*, 468 F.3d 1243, 1250 (citations omitted).

In Plaintiff's letter of demotion, Strickland stated that the purpose was to summarize the meeting they had on August 10th about his inappropriate behavior on August 7th and 8th. Strickland then outlined the incident that occurred on August 7th in which Plaintiff failed to follow orders and was discourteous to Houston, the Central Kitchen Manager. Strickland also stated that she overhead Plaintiff telling the story to other employees on August 8, 2007.

In addition, Strickland noted that Plaintiff had recently been suspended for an inappropriate comment and had been warned that should another incident occur involving inappropriate behavior, further disciplinary action would result. Citing to the district's policy regarding abusive language, insubordination, and treating co-workers in a courteous manner, Plaintiff was re-assigned to the position of Porter.

Plaintiff asserts that Strickland's explanation is false by relying on one paragraph in Strickland's letter that stated Strickland overheard Plaintiff telling another employee on August 8, 2007 what had occurred on August 7th. Plaintiff denies that he made any statements on August 8th about the events occurring the previous day and contends that a trier of fact could reasonably infer from the falsity of Strickland's statement that she is trying to cover up a discriminatory motive.

It is undisputed, however, that the events occurred on August 7th. Plaintiff failed to follow Houston's instructions regarding the delivery of three catering events, and Houston called Plaintiff on the phone that day to ask Plaintiff why he had not followed her instructions. Plaintiff, believing Houston was no longer on the line, then made disparaging remarks about Houston that she overheard. Plaintiff admitted that he did not follow Houston's instructions and that he did not have any explanation for not doing so.

The fact that Plaintiff disputes Strickland's statement that he told the events of August 7th to other employees on August 8th does not change the events that occurred on August 7th. Plaintiff's dispute regarding one small part of Defendant's explanation does not change the undisputed facts that Strickland set forth in her letter that he was discourteous on August 7th and failed to follow a supervisor's order.  It also does not change the fact that Plaintiff had previously been suspended and warned about making further discourteous comments.  Plaintiff, therefore, has not shown that the preponderance of the evidence indicates that discrimination played a part in Strickland's actions or that a reasonable person would disbelieve Strickland's statement and infer that she is covering up a discriminatory motive.

In sum, the two pieces of evidence that Plaintiff relies upon taken together are insufficient to create a genuine issue of material fact as to whether a discriminatory animus played a part in Plaintiff's demotion.  Accordingly, Defendant is granted summary judgment on this issue.

## B.  Title VII Retaliation Claim

Plaintiff brings a retaliation claim asserting that he was retaliated against for complaining about a hostile work environment and being treated differently because he was a male. Defendant moves for summary judgment on the basis that Plaintiff cannot establish a prima facie case of retaliation.  Defendant also asserts that it has presented a legitimate reason for demoting Plaintiff, and Plaintiff has presented no evidence of pretext.

"To prevail on a Title VII retaliation claim, a plaintiff must establish that retaliation played a part in the employment decision and may choose to satisfy this burden" under either a mixed-motive theory or pretext theory.[31]   Plaintiff is relying on the mixed-motive method. The law set

---

[31]*Fye*, 516 F.3d at 1224-25.

forth above with regard to the sufficiency of evidence in a mixed-motive case also applies to Plaintiff's retaliation claim. Plaintiff must present sufficient evidence from which a jury could conclude that "a retaliatory animus played a 'motivating part' in the employment decision."[32] "Once the plaintiff proves that a retaliatory animus was a motivating factor, the burden of persuasion shifts to the defendant to prove that it would have taken the same action absent the retaliatory motive."[33]

Taking the facts in the light most favorable to Plaintiff, as the Court must as this point, the following is the timeline of events. On August 7, 2007, Plaintiff disregarded a supervisor's order and spoke discourteously about a fellow employee. A meeting was held between Strickland, Houston, Childs, and Plaintiff on August 10, 2007 in which the events of August 7th and August 8th were discussed.

On August 20, 2007, Plaintiff met with Assistant Superintendent Lane. In this meeting, Plaintiff complained that he was treated differently because he was a man and that he was working in a hostile work environment. On or about August 24, 2007, Dr. Lane met with Strickland to discuss Plaintiff's meeting. Dr. Lane relayed Plaintiff's concerns about several incidents and his complaint about working in a hostile work environment. On August 27, 2007, Strickland made typewritten notes about her meeting with Dr. Lane in which she stated that she did not believe the incidents Plaintiff complained about constituted a hostile work environment.

On August 28, 2007, Strickland hand delivered a letter to Plaintiff (which was dated August 22, 2007) that stated it was summarizing the meeting of August 10th in which the events occurring on August 7th and 8th were discussed. Plaintiff contends that disciplinary action was not discussed

---

[32]*Id.* at 1225.

[33]*Id.* (citations omitted).

during the August 10th meeting.[34] In Strickland's letter, she stated that he was demoted effective immediately, August 29, 2007.[35]

Defendant contends that Plaintiff cannot establish a prima facie case because Plaintiff did not engage in protected activity prior to his demotion because Plaintiff did not allege sex or gender discrimination in his meeting with Dr. Lane. Although Plaintiff used the term "hostile work environment," Defendant argues that he did not explain who was creating the hostile work environment or explain what was hostile about it. Plaintiff points to his deposition testimony in which he testified that he told Dr. Lane that he thought the workplace was hostile to male employees and that they were treating him differently because he was a man. "Protected opposition can range from filing formal charge to voicing informal complaints to superiors."[36]  The Court finds Plaintiff's statement sufficient to demonstrate that there is a genuine issue of material fact as to whether Plaintiff engaged in protected activity.

---

[34]Defendant contends that Plaintiff is attempting to create a sham factual issue and that Plaintiff only made this statement in a self-serving affidavit attached to his opposition to summary judgment which contradicts his deposition testimony that the decision regarding his demotion was made during the August 10th meeting. "Contradictions found in a witness' testimony are not, in themselves, sufficient to preclude such testimony."  *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir. 2001). A court is "justified in disregarding certain contradictory testimony" if it concludes it "is an attempt to create a sham fact issue." *Id.*  The Court, in reviewing the evidence, notes that while Plaintiff did make the statement that the decision regarding his demotion was made during the August 10th meeting, he made the statement in the context of reviewing the letter dated August 22, 2007 that set forth this statement.  In addition, Plaintiff testified in his deposition that Ms. Strickland did not mention the possibility that he might be reassigned or demoted to Porter during the August 10th meeting.  Plaintiff testified in his deposition that he learned of his demotion on August 28th when the August 22nd letter was delivered to him. As such, the Court finds that Plaintiff does not create a sham factual issue.

[35]Plaintiff has presented evidence that Ms. Strickland testified that she sometimes starts a letter on one day and does not complete it until several days later.  While Defendant contends that this does not warrant the inference that Ms. Strickland started the letter on August 22nd and completed it on August 28th, Ms. Strickland had a meeting with Dr. Lane on August 24th and delivered the letter dated August 22nd on August 28th.  As such, the factual record is uncertain as to when the letter was completed.

[36]*Hertz v. Luzenac America, Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004).

Defendant next contends that Plaintiff cannot establish a causal connection because Strickland's decision to demote Plaintiff occurred prior to Plaintiff's conversation with Dr. Lane. As set forth above, however, the facts in the light most favorable to Plaintiff indicate that there is a genuine factual dispute as to whether the decision to demote Plaintiff occurred prior to or after Strickland learning of Plaintiff's complaint to Dr. Lane.

Defendant sets forth a legitimate non-discriminatory basis for demoting Plaintiff. Defendant states that Plaintiff was demoted because of his inappropriate conduct on August 7th and 8th, i.e, disregarding a direct instruction form his supervisor and speaking discourteously about his supervisor to a fellow employee. While Plaintiff may dispute that he discussed the incident on August 8th, there is no dispute that the incident occurred on August 7th and that this is a legitimate reason.

Plaintiff contends that there are two pieces of evidence from which to infer that Strickland was motivated by a retaliatory animus. The first piece of evidence Plaintiff points to is the alleged falsity of Strickland's explanation as to the timing of her decision to demote Plaintiff. The second piece of evidence Plaintiff relies upon is the close temporal proximity between Plaintiff's protected conduct and the adverse action. These two pieces of evidence are related because the only way Plaintiff can demonstrate close temporal proximity is if the Court accepts Plaintiff's contention that Strickland's explanation regarding the timing of her decision was false. As such, the relevant inquiry is whether Plaintiff can establish that Defendant was motivated by a retaliatory intent on the basis of close temporal proximity.

The Tenth Circuit has recognized that "protected conduct closely followed by adverse action may justify an inference of retaliatory motive."[37]  The Tenth Circuit in making the finding that close temporal proximity may justify an inference of retaliatory motive has done so when determining whether Plaintiff has made a prima facie case of retaliation under a pretext theory which involves the *McDonnell Douglas* burden shifting analysis. The Court is cognizant that Plaintiff is proceeding under a mixed-motive theory, and the Court will apply the principles set forth in this cases to Plaintiff's mixed-motive theory.

While close temporal proximity may justify an inference of retaliatory motive, it is generally insufficient to defeat summary judgment.[38] The Tenth Circuit has stated "[i]t is because of this relatively lax burden that we allow temporal proximity between a protected activity and an adverse action to establish a prima facie case; for the same reason, we have not imported this lessened standard to pretext analysis where the burden is more demanding and requires a plaintiff to assume 'the normal burden of any plaintiff to prove his or her case at trial.'"[39]

Regardless of the burden, the relevant issue is whether Plaintiff has demonstrated that there is a genuine issue of material fact as to whether Plaintiff's protected activity was a motivating factor in the decision to demote Plaintiff.  The Court concludes that there is not a genuine issue.  Plaintiff has failed to present sufficient evidence that an illegitimate retaliatory animus factored into Defendant's decision to demote Plaintiff, because the sole evidence Plaintiff relies upon is the close

---

[37]*Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996); *see also Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240 (10th Cir. 2004).

[38]*See Annett*, 371 F.3d at 1240-41; *see also Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1180 (10th Cir. 1999).

[39]*Annett*, 371 F.3d at 1241 (citing *Equal Employment Opportunity Comm'n v. Flasher Co., Inc*, 986 F.2d 1312, 1316 (10th Cir. 1992)).

temporal proximity which the Tenth Circuit has noted is insufficient to defeat summary judgment. Considering the evidence as a whole, Plaintiff has failed to demonstrate that a genuine issue of material fact exists as to whether Defendant acted with a retaliatory motive. Accordingly, Defendant is entitled to summary judgment on this claim.

### C. First Amendment Retaliation Claim

Plaintiff brings this claim against Defendant USD 500 and Defendant Karla Strickland. Plaintiff asserts that he was retaliated against by Strickland and USD 500 for exercising his First Amendment right to free speech. Both Defendant USD 500 and Defendant Strickland move for summary judgment on the basis that Plaintiff cannot establish a viable First Amendment Claim. Defendant Strickland additionally asserts that she is entitled to summary judgment on the basis of qualified immunity.

There is a five step test in determining whether plaintiff can establish a freedom of speech retaliation claim.[40] The five part test includes:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct. The first three "prongs" are said to be issues of law to be decided by the court; the last two are factual issues to be decided by the factfinder.[41]

---

[40]Both parties state a four-part test for determining whether Plaintiff can survive summary judgment on his free speech retaliation claim, and Plaintiff specifically takes the framework as set forth in the Court's previous Order on Defendant's Motion for Judgment on the Pleadings (Doc. 19). Although the Court stated a four-part test in that Order, the Court noted that there was an initial question to be answered before engaging in the four-part test. (Doc. 19, pp. 6-7, n. 3). In deciding this issue, the Court will apply the five-part test as set forth by the Tenth Circuit and referenced to by this Court in its previous Order.

[41]*Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009) (internal citations omitted).

Plaintiff states that he was retaliated against because he told Dr. Lane in his August 20, 2007 meeting about the same concerns regarding the catering service that he had raised during a departmental meeting on April 2, 2007.   The April 2, 2007 meeting was called by Strickland to discuss issues relating to the department's catering service and working together as a team. Plaintiff's concerns included the food being prepared in a timely manner and food sometimes having mold.[42]

The Court's first inquiry is whether Plaintiff's speech was made pursuant to his official duties or as a citizen.[43]  If Plaintiff's speech was made pursuant to his official duties, the inquiry ends.[44]  The Tenth Circuit has provided guidance on whether speech was made pursuant to an employee's official duties. "[S]peech relating to tasks within an employee's uncontested employment responsibilities is not protected from regulation."[45]  "This may be true even though the speech concerns an unusual aspect of an employee's job that is not part of his everyday functions."[46] "The ultimate question is whether the employee speaks as a citizen or instead as a government employee- an individual acting 'in his or her professional capacity.'"[47]  "[I]f an employee engages

---

[42]Plaintiff contends in his affidavit that he complained about food being prepared in a timely manner, food sometimes being served on dirty dishes, and food sometimes having mold.  Defendant states that Plaintiff only testified in his deposition about a rotten tomato on a salad and objects to Plaintiff's affidavit on the basis that it is self-serving.  From reviewing the evidence, Plaintiff testified about the timeliness of the food and a rotten tomato. The additional issues that Plaintiff raises in his affidavit about dirty dishes and moldy food appear to be self-serving , but they do not impact the Court's analysis.

[43]Defendant asserts that Plaintiff's speech was made as an employee and not as a citizen and addresses this inquiry as its second step.  Plaintiff addresses this factor as part of the first step and frames the issue as whether the employee has spoken out as a citizen upon matters of public concern. Although Plaintiff states that this must be determined at trial, this is a legal question for the Court to determine.

[44]*Hesse v. Town of Jackson, Wyoming*, 541 F.3d 1240, 1249 (10th Cir. 2008).

[45]*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1203 (10th Cir. 2007).

[46]*Id.* (quotation and citation omitted).

[47]*Id.* (citing *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951, 1960, 164 L.Ed.2d 689 (2005)).

in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties."[48] This Court must take "a practical view of all the facts and circumstances surrounding the speech and the employment relationship."[49]

Defendant asserts that a cursory review of the matters Plaintiff addressed with Dr. Lane shows that Plaintiff's speech was made in his role as an employee and not as a citizen. Plaintiff states that his employee duties did not include overseeing the department's catering service. Plaintiff's duties, however, related to the catering department as he provided assistance with delivering meals.

Plaintiff testified that the April 2nd meeting was called to discuss issues with the department's catering service and working together as a team.  In raising his concerns in the April 2, 2007 departmental meeting that the food was not being prepared in a timely fashion and the possibility of a rotten tomato on a salad, Plaintiff was speaking in his role as an employee.  In the August 20, 2007 meeting, Plaintiff's comments were made pursuant to his official duties as an employee because he was merely relaying the events that occurred at the April 2nd meeting.  As such, the Court finds as a matter of law that Plaintiff's speech was made pursuant to his official duties and not as a citizen.

Furthermore, at the second step of the test, the Court's task is to determine whether Plaintiff's speech involved a matter of public concern, and the Court concludes that it did not.  In making the analysis as to whether speech involved a matter of public concern, the Court should

---

[48] *Brammer-Hoelter*, 492 F.3d at 1203.

[49] *Id*. at 1204.

"focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose."[50]  "Speech concerning individual personnel disputes or internal policies will typically not involve public concern."[51] Although Plaintiff asserts that courts will focus on whether the speech was calculated to disclose wrongdoing or inefficiency on the part of governmental officials, Plaintiff's complaint about the timeliness of food being served was not calculated to disclose inefficiency on the part of the school board.  Plaintiff's complaint about food not being served timely related to how it affected his job and was calculated to redress a personal grievance.  Similarly, Plaintiff's complaint regarding a rotten tomato did not have a broader public purpose as Plaintiff's complaint was made in the context of the April 2nd meeting addressing the department's catering service working together as a team. Because Plaintiff cannot establish a genuine issue of material fact with regard to the first or second inquiry of his free speech retaliation claim, Defendant USD 500's and Defendant Strickland's motion for summary judgment on this claim is granted.

### D. Due Process Claim

Plaintiff asserts that his Fourteenth Amendment right to procedural due process was violated when he was demoted from warehouse manager to porter. Defendant contends that it is entitled to summary judgment because Plaintiff did not possess a property interest in his job, and even if Plaintiff did possess a property interest, Plaintiff was afforded an appropriate level of process.

---

[50]*Curtis v. Okla. City Pub. Sch. Bd. of Ed.*, 147 F.3d 1200, 1212 (10th Cir. 1998) (citation omitted).

[51]*Id.*

"The Fourteenth Amendment's procedural due process protections apply only to an individual deprived of a recognized property or liberty interest."[52]  "In determining whether an individual has been deprived of his right to procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process."[53]

"Property interests are created not by the Constitution itself, but may be defined by independent sources such as state statutes, regulations, municipal ordinances, university rules, and even express or implied contracts."[54]  "[T]he touchstone is whether under state law, the employee has 'a legitimate claim of entitlement' in continued employment, as opposed to a 'unilateral expectation' or 'an abstract need or desire' for it."[55]  In Kansas, an employee is presumptively at-will in the absence of an express or implied-in-fact contract.[56]

Plaintiff contends he had a property interest in his continued employment as warehouse manager based on an implied-in-fact contract with Defendant.  "The existence of an implied contract depends on the intent of the parties, divined from the totality of the circumstances."[57]  In providing guidance on this issue, the Kansas Supreme Court has stated:

> Where it is alleged that an employment contract is one to be based upon the theory of 'implied in fact,' the understanding and intent of the parties is to be ascertained

---

[52]*Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 536 (10th Cir. 1995) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972)).

[53]*Farthing v. City of Shawnee,* 39 F.3d 1131, 1135 (10th Cir. 1994).

[54]*Anglemyer*, 58 F.3d at 536.

[55]*Farthing*, 39 F.3d at 1135 (citations omitted).

[56]*Anglemyer*, 58 F.3d at 537.

[57]*Id.*

from several factors which include written or oral negotiations, the conduct of the parties from the commencement of the employment relationship, the usages of the business, the situation and objective of the parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to explain or make clear the intention of the parties at the time said employment commenced.[58]

The Tenth Circuit has noted that "whether an implied contract exists which creates a property interest in employment is normally a question of fact for the jury."[59]  However, despite this general rule, summary judgment is appropriate where no material facts are in dispute and where "the plaintiff presents only evidence of his own unilateral expectations of continued employment."[60]

Plaintiff asserts that an implied-in-fact contract existed based upon (1) the policies adopted by  the Board of Education for USD 500 setting forth a list of situations or acts constituting "just cause;" (2) testimony from Assistant Superintendent Rios stating that it would be fair to interpret this guideline as meaning that employees will be disciplined only if just cause exists for that discipline; and (3) Strickland's testimony that she interprets the guidelines in the same manner.

"[A] written personnel policy, standing alone, is not sufficient to establish an implied contract of employment for a specific duration."[61]  However, "a plaintiff claiming an implied contract for a definite duration can survive summary judgment by introducing a handbook or manual plus some independent, probative evidence bearing on the issue of the defendant's intent."[62]  Here,

---

[58]*Morris v. Coleman Co., Inc.*, 241 Kan. 501, 513, 738 P.21 841, 848-49 (1987).

[59]*Anglemyer*, 58 F.3d at 53 (citation omitted).

[60]*Warren v. City of Junction City*, 176 F. Supp. 2d 1118, 1126 (D. Kan. 2001) (citations omitted).

[61]*Getz v. Bd. of County Comm'rs of the County of Shawnee*, 194 F. Supp. 2d 1154, 1167 (D. Kan. 2002) (citing *Riddle v. City of Ottawa*, 12 Kan. App. 2d 714, 754 P.2d 465 (1988)); *see also  Brown v. United Methodist Homes for the Ages*, 249 Kan. 124, 137, 815 P.2d 72, 82 (1991).

[62]*Farthing*, 39 F.3d at 1139 (citations omitted).

Plaintiff cites to testimony from Rios and Strickland that it would be fair to interpret the guideline in the policy manual as meaning that employees will be disciplined only if just cause exists. However, their testimony only relates to the guideline in the personnel manual, and they are only testifying about the meaning of this phrase.

In *Farthing v. City of Shawnee*, the Tenth Circuit noted that deposition testimony restating the relevant sections of a personnel manual "simply reiterates what the personnel manual already says in no uncertain terms. Its evidentiary worth is merely as corroborative evidence of an otherwise undisputed fact, and in essence, amounts to nothing more than reliance on the personnel manual itself.  In other words, it does not add anything above and beyond the terms of the personnel manual . . . ."[63]   Here, the evidence is similar, and  it is not additional probative evidence as to the Defendant's intent to enter into an implied-in-fact contract. Accordingly, the Court finds that an implied-in-fact contract did not exist between the parties and Plaintiff did not have a protected property interest in his continued employment as warehouse manager. Defendant is, therefore, granted summary judgment on this issue.

**IT IS ACCORDINGLY ORDERED** this 24th day of June, 2009  that Defendant USD 500's Motion for Summary Judgment (Doc. 40) is hereby granted .

**IT IS FURTHER ORDERED** that Defendant Strickland's Motion for Summary Judgment (Doc. 42) is hereby granted.

**IT IS SO ORDERED**.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[63]*Id*. at 1140.